UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

GEARY SCHINDEL,

　　*Plaintiff*,

v.                                                  Case No.  SA-22-CV-00960-JKP

EDWARDS AQUIFER AUTHORITY,

　　*Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Edwards Aquifer Authority's (the EAA) Motion for Summary Judgment. *ECF Nos. 48,53*. Schindel Responded. *ECF No. 52*. Upon consideration, the Court concludes the Motion shall be GRANTED.

### Undisputed Factual Background

Schindel filed this suit against his former employer, the EAA, asserting multiple causes of action. This Court granted in part the EAA's Motion to Dismiss for failure to state a claim, dismissing all causes of action except the alleged violation of the Age Discrimination in Employment Act (ADEA) related to his demotion from the position of Chief Technical Officer to Senior Hydrogeologist. *ECF No. 36*. The EAA now moves for summary judgment on this remaining ADEA cause of action.

In his First Amended Complaint, Schindel alleges he served as Chief Technical Officer and Director of Aquifer Science Program. *ECF No. 31*. In this capacity, he reported to the Executive Director of the Aquifer Management Services Department and supervised three senior staff employees. *Id*. Schindel alleges he was demoted on January 11, 2020, when he was redes-

ignated a Senior Hydrogeologist from his position as a Chief Technical Officer. Schindel alleges he was 62 years' old at the time of this demotion, and "his age was the motivating factor when he was subjected to an unwarranted demotion in position, pay, and supervisory functions." Schindel alleges this demotion "included the loss of all his management responsibilities, supervisory duties and a reduction of pay of over thirty (30%) percent." Further, Schindel alleges he "was issued a bogus corrective counseling, a disciplinary action by" his supervisor Mark Hamilton which "was mere pretext, calculated to mask unlawful discrimination," and he "was denied an opportunity to rebut the false and/or inaccurate basis claimed for the demotion." Schindel alleges "Mark Hamilton has a history of issuing reprimands to Mr. Schindel even when the basis of the reprimand was shown to be demonstrably false and untrue," which "demonstrated that Hamilton did not care about the truth or the falsity of his reprimands or other adverse actions and that the goal was to fabricate disciplinary contacts or records." *ECF No. 31.*

## Legal Standard

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).[1] "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual

---

[1] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

2

dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323; *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). The movant is not required to negate the elements of the nonmovant's case but may satisfy its summary judgment burden by demonstrating the absence of facts supporting specific elements of the nonmovant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994).

To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery or admissions that demonstrate the absence of a triable dispute of material fact. *Celotex Corp.*, 477 U.S. at 323; *Rodriguez*, 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586-87; *see also* Fed. R. Civ. P. 56(c). Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which this evidence raises a genuine dispute of material fact. *Ra-*

*gas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)(citing *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994)). Further, should the nonmoving party fail "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music*, *Inc. v. Bentley*, SA-16-CV-394, 2017 WL 782932, at \*2 (W.D. Tex. Feb. 28, 2017).

In determining the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas*, 136 F.3d at 458. In addition, a court may not make credibility determinations or weigh the evidence and must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co.*, *Inc.*, 402 F.3d 536, 540 (5th Cir. 2005)(citations omitted).

## Discussion

The ADEA provides "it shall be unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1),(2); *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 308–09 (5th Cir. 2004). In essence, the ADEA makes it unlawful for an employer to discharge or otherwise subject any employee who is at least forty years old to an adverse employment action because of his age. *Rutland v. Moore,* 54 F.3d 226, 228 (5th Cir. 1995) (citing 29 U.S.C. §§ 623(a), 631(a)). "Congress expressly declared that the purposes of the ADEA were 'to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers

4

and workers find ways of meeting problems arising from the impact of age on employment.'" *Wamsley v. Champlin Ref. & Chem., Inc.,* 11 F.3d 534, 541 (5th Cir. 1993), *cert. denied,* 514 U.S. 1037 (1995)(citing 29 U.S.C. § 621(b)). When a plaintiff alleges disparate treatment based upon age, an employer's liability depends on whether "age was the 'but-for' cause of his termination—proving that age was a 'motivating factor' for the decision is not enough." *McMichael v. Transocean Offshore Deepwater Drilling, Inc*., 934 F.3d 447, 455–56 (5th Cir. 2019), *citing Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009) (holding that a "plaintiff must prove by a preponderance of the evidence ... that age was the 'but-for' cause of the challenged employer decision") *and Moss v. BMC Software, Inc.*, 610 F.3d 917, 928 (5th Cir. 2010) ("[T]he Supreme Court rejected the application of Title VII's 'motivating factor' standard to ADEA cases."); *see also* proposed amendment to 29 U.S.C. § 623 to clarify the standard of proof to insert "(g) Except as otherwise provided in this chapter, an unlawful practice is established under this chapter when the complaining party demonstrates that age or an activity protected by subsection (d) was a motivating factor for any practice, even though other factors also motivated the practice." 118th CONGRESS, 1st Session, 118th CONGRESS, 1st Session). Given that the amendment to § 623 to clarify the standard of proof to allow proof of age as a motivating factor, rather than the "but for" cause of the adverse employment action, is merely proposed as of December 4, 2023, this Court will follow the guidance of the Fifth Circuit's recent opinion in *McMichael v. Transocean Offshore Deepwater Drilling, Inc*., holding the employee's standard of proof at this time is to show age was the 'but-for' cause of his termination. *See McMichael*, 934 F.3d at 455–56. Proof of "but for" causation means age was the reason for the employer's action. *See id*.

As in this case, when analyzing a cause of action of age discrimination in violation of the ADEA which relies upon circumstantial evidence, only, courts utilize the burden-shifting

framework set out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), which is typically utilized in the context of Title VII employment discrimination suits. *McMichael*, 934 F.3d at 456; *see Koteras v. Briggs Equip., Inc.*, 854 Fed. Appx. 583, 584 (5th Cir. 2021). This framework applies upon determination of a motion for summary judgment and to the burdens of proof at trial. *McDonnell*, 411 U.S. at 802; *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015).

Within the context of a motion for summary judgment, under the *McDonnell Douglas* framework, the burden of persuasion lies always on the plaintiff; the burden of production shifts, falling first upon the plaintiff (the non-movant) to present evidence sufficient to establish a fact or raise a presumption of the alleged age discrimination. *Squyres*, 782 F.3d at 231; *Miller v. Raytheon Co.,* 716 F.3d 138, 144 (5th Cir. 2013). This burden is typically referred to as the presentation of a prima facie case, in which the plaintiff presents evidence to establish each of the prima facie elements of the cause of action. *See id.* "'To establish a prima facie case, a plaintiff need only make a very minimal showing.'" *Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 41 (5th Cir. 1996); *Anderson v. Goodyear Tire & Rubber Co.*, 367 F. Supp. 2d 1061, 1070 (E.D. Tex. 2004).

If the plaintiff presents sufficient evidence to set forth this prima facie case, the plaintiff creates a presumption of age discrimination, and the burden, then, shifts to the employer to articulate a legitimate, nondiscriminatory reason for its alleged discriminatory actions. *McMichael*, 934 F.3d at 457–60; *Rachid*, 376 F.3d at 312. Because only the burden of production shifts, the employer need only articulate a legitimate, nondiscriminatory reason by presenting evidence establishing a reason for its action "which, '*if believed by the trier of fact*,' would support a finding that unlawful discrimination was not the cause of the employment action." *Bauer v. Albemarle*

6

*Corp.,* 169 F.3d 962, 966 (5th Cir. 1999) (quoting *Hicks,* 509 U.S. at 507) (emphasis in original). This reason may not be evaluated or analyzed for its credibility. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000).

If, at this summary-judgment stage of the litigation, the plaintiff employee produced evidence sufficient to establish a *prima facie* case, and the defendant employer failed to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for its employment decision, the employee is entitled to take his case to a jury. *Patrick v. Ridge*, 394 F.3d 311, 316 (5th Cir. 2004). An employer's satisfaction of its burden of production removes the presumption of age discrimination and the burden shifts back to the plaintiff. *Reeves,* 530 U.S. at 142.

At this final stage within the context of a motion for summary judgment, to satisfy this burden, the plaintiff must present enough evidence for a reasonable jury to believe the employer's "reasons are pretexts for unlawful discrimination." *McMichael*, 934 F.3d 456-57.

Although the prima facie case and the inferences drawn therefrom may still be considered at the pretext stage, this evidence must be combined with sufficient evidence to permit the trier of fact to conclude the employer unlawfully discriminated against the plaintiff. *Reeves,* 530 U.S. at 142. To this effect, even if the ultimate factfinder could find the employer's reason unpersuasive or contrived, there must still be sufficient evidence for the factfinder to believe the employee's explanation for the adverse action, that is, the employer unlawfully discriminated. *Id.* at 146-148. Unsubstantiated assertions and conclusory allegations of discrimination are not competent summary judgment evidence, and therefore, are insufficient to support a party's burden at any stage. Fed. R. Civ. P. 56(c),(e); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002); *Ragas*, 136 F.3d at 458.

### 1. Schindel's Burden to Present a Prima Facie Case

The prima facie elements of a cause of action for violation of the ADEA are, the plaintiff: 1) is within the protected class; 2) is qualified for the position; 3) suffered an adverse employment decision; and 4) was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise suffered an adverse employment decision because of his age. *Reeves,* 530 U.S. at 142; *Rachid*, 376 F.3d at 309 (5th Cir. 2004). If the adverse employment action involves removal of the employee from their current position, when the employer does not replace the plaintiff, the plaintiff can show fourth element if "others who were not members of the protected class remained in similar positions" or he was treated less favorably than other similarly-situated younger employees. *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999); *Vaughn v. Edel,* 918 F.2d 517, 521 (5th Cir. 1990).

Here, the EAA concedes the first three elements exist and challenges only Schindel's ability to satisfy the fourth element. The EAA contends it is entitled to summary judgment on the ADEA cause of action because Schindel cannot show he was replaced by someone younger because his position remains open, that is, after the EAA demoted Schindel, it did not hire or promote anyone, and still has not filled Schindel's position.

The Court is dubious of the EAA's assertion it is entitled to summary judgment on Schindel's cause of action because it did not hire anyone to fill his position. If this were a valid basis for summary judgment, a favorable finding would encourage dishonest and improper employer behavior to avoid suit or accountability. The EAA's position also ignores Schindel's alternative opportunity to establish the fourth element of his prima facie case by showing he "otherwise suffered an adverse employment decision because of his age." *See Rachid*, 376 F.3d at 309.

To satisfy his burden pertaining to the fourth element, Schindel provides his own Declaration, in which he describes an incident in which Hamilton removed from him the responsibility of supervision of the EAA's internship program stating, "they were going to assign 'younger employees.'" *ECF No. 52, attachment 5, exh. 4*. Schindel states those employees who Hamilton placed the interns with were not licensed Professional Geoscientists. *Id*. Schindel lamented this unexplained removal of responsibility because he enjoyed the supervision and interaction with interns and states, "Hamilton purposely removed me from involvement – not to provide a better intern experience, but to try and isolate me by removing responsibilities and force my retirement." *Id*.

This Declaration and the incident described does not pertain to Schindel's demotion which is the subject of this suit. Schindel implies tangentially that removal of his responsibility for the intern program was tied to his demotion, but the Declaration does not provide enough for this Court to deduce this fact. The only indication Schindel provides in the Declaration regarding potential age discrimination was Hamilton's comment regarding giving Schindel's responsibility to "younger employees."  The Court finds this statement insufficient to establish his demotion was based upon his age. For these reasons, the Court finds this evidence scant and minimal and full of self-serving speculation; however, in the interest of caution given the EAA's self-serving action of not filling Schindel's position, the Court will proceed with the assumption Schindel presents enough to satisfy his initial summary judgment burden to establish the prima facie elements of his cause of action for violation of the ADEA.

## 2.   The EAA's Burden to Articulate a Legitimate, Non–Discriminatory Reason

The burden of production shifts to the EAA to articulate a legitimate, non-discriminatory reason for Schindel's demotion. To meet this burden, the EAA provides evidence consisting of Mark Hamilton's Declaration and Schindel's deposition. *ECF No. 48, attachments 1,2,3*.

In his Declaration, Hamilton states, beginning in 2019, the EAA tasked its staff with conducting field inspections at approximately 39 sites in the Edwards Aquifer region for the purpose of updating topography maps used by first responders. *ECF No. 48, attachment 3, par. 9*. Because the Edwards Aquifer is an underground body of water, it was important that its maps accurately depict existing karst features and surface drainage patterns so first responders can avoid contamination of the Edwards Aquifer. *Id*. As part of this project, on December 4, 2019, Schindel led a team tasked with inspecting property owned by Keith Zars Pools to evaluate and assess the surface flows of the area and drainage into the known karst features and large sinkhole for the purpose of updating the maps as necessary. *Id. at pars. 9,10; attachment 2, Schindel deposition pp. 97-98*. During the inspection, the team found several concrete culverts covered by a grate that lead into sinkholes. Without obtaining authority or permission from the EAA to enter the sinkholes, Schindel removed the grates and directed two junior staff members, Jesse Chadwick and Jennifer Schudrowitz, to enter a culvert and descend into a sinkhole. *ECF No. 48, attachment 3, pars. 11,14*. One of the staff members was tied to a rope, the other was not. *Id*. Another of the staff members sent Hamilton, who was not present, a picture of Chadwick tied to the end of a rope inside a culvert and advised that she had entered at Schindel's direction. *Id*. Hamilton considered the unplanned spontaneous entry into the sinkhole unnecessary to fulfill the purpose of the inspection. Hamilton considered the entry into the sinkhole to be a dangerous activity because the employees were not trained to do so, and entering sinkholes is not a sanctioned EAA

activity. Hamilton immediately sent Schindel a text message directing him to have the staff member exit the sinkhole. *Id. at pars. 11-13*. Hamilton also directed Ben Urbanczyk, the Environmental Principal Inspector, who was leading the field inspection to communicate to Schindel his directive to evacuate the sinkhole. *Id*.

Shortly after the inspection, Schindel met with Hamilton and Felix Marquez, Executive Director of Administration & Financial Services, to discuss the incident. *Id. at pars. 14-*15. Hamilton explained the perceived risks to employee safety and the requirement that the activity be sanctioned by the EAA. *Id*. Schindel disagreed that he did anything wrong or that he had put the health and safety of the staff members at risk, and defended himself by referencing his experience in cave entry and exploration and emphasizing that Hamilton was in no position to assess the appropriateness or safety of the directed activity at the site. *Id. at pars. 14-16*. Schindel admitted entering the sinkholes was an "on-the-spot decision" he made once he was able to visually inspect them, and he believed he did not need to get permission from Mr. Hamilton or Mr. Boenig to enter sinkholes because of his superior caving expertise. *ECF No. 48, attachment 2, p. 109*.

After reviewing the underlying facts and circumstances, Hamilton determined the incident warranted disciplinary action because Schindel exercised poor judgment by directing two employees to engage in an unnecessary dangerous activity and exhibited a reckless and insubordinate attitude by his belief he did not need authority to enter the sinkholes and his inability or refusal to acknowledge the egregiousness of the situation. *ECF No. 48, attachment 3, pars. 19-*20. Taken together, Hamilton lost confidence in Schindel's ability to continue serving in a senior-level position. Hamilton, Marquez, and Human Resources Director Raquel Garza discussed possible forms of disciplinary action including termination of Schindel's employment. *Id*. Ultimate-

ly, Hamilton recommended relieving Schindel from the position of Certified Training Officer and demoting him to Senior Hydrogeologist. Mr. Ruiz approved this decision. *Id*. Hamilton presented Schindel with the written disciplinary action (the "Supervisory Counseling Record") detailing the reasons for his demotion, which he signed on December 19, 2019. *Id. at pars. 19-20, exh. B-2*. After his demotion, the EAA did not fill Schindel's position, and it remains unfilled. *Id. at par. 22*.

The Court concludes this evidence is sufficient to present a legitimate, non-discriminatory reason for the EAA's adverse employment action of demoting Schindel, and therefore, sufficient to satisfy its summary judgment burden.

### 3. Schindel's Burden to Show Pretext

Because the EAA articulates a legitimate non-discriminatory reason for Schindel's demotion, the inference of discrimination no longer exists, Schindel must present evidence from which a reasonable trier of fact could infer the reason given is not true but is, instead, a pretext for age discrimination. *McMichael*, 934 F.3d 456-57. Because liability depends on whether age actually motivated the employer's decision, proof of discriminatory intent is a critical requirement. *Id*.

At this stage, Schindel argues in his Response that the EAA, specifically Hamilton, discriminated against other employees who were "in their 60s." *ECF No. 52, p. 22*. To rebut the EAA's non-discriminatory reason given, Schindel presents argument, only with no cited evidence, rebutting the reasons given for his demotion and refuting the veracity of the EAA's and Hamilton's opinions regarding the safety risk of his action. *ECF No. 52, p. 22*. In this argument, Schindel accuses Hamilton of a history of "taking bogus disciplinary actions against [him]." *Id*. Schindel discusses an incident in which he had an employment conflict with Hamilton; however, he does not provide context to infer the incident happened because of or related to his age or how

he suffered an adverse action based upon his age. *Id.* Within this argument, Schindel provides no cite to evidence that rebuts the EAA's non-discriminatory reason for his demotion and or evidence that creates an inference that age was a determinative factor in his demotion. This argument, without evidence, constitutes self-serving and subjective allegations, and therefore, is not sufficient to satisfy Schindel's burden at this stage. *See Molnar v. Ebasco Constructors, Inc., 986 F.2d 115, 119 (5th Cir. 1993); see also Anderson v. Goodyear Tire & Rubber Co.*, 367 F. Supp. 2d 1061, 1074.

Notwithstanding Schindel's failure to provide evidence to support his arguments made within the Response, this Court may still consider the evidence presented to establish Schindel's prima facie case and any inference properly drawn from this evidence to determine the issue whether the EAA's reason given is pretextual. *Reeves,* 530 U.S. at 143 (quoting *Burdine,* 450 U.S. at 255 n. 10); *Laxton v. Gap Inc.*, 333 F.3d 572, 582 (5th Cir. 2003). If "the evidence of pretext is substantial, the plaintiff may create a genuine issue of material fact without independent evidence that discrimination was the real reason for the adverse employment action." *Crawford v. Formosa Plastics Corp., Louisiana*, 234 F.3d 899, 903 (5th Cir. 2000)(citing *Walton v. Bisco Indus., Inc.,* 119 F.3d 368, 372 (5th Cir. 1997)); *Reeves,* 530 U.S. at 143; *Laxton,* 333 F.3d at 585. Again, the plaintiff's assertion of pretext must be supported by more than mere self-serving, subjective, or speculative allegations; a plaintiff must provide sufficiently specific, substantive reasons for his claim of pretext. *Molnar,* 986 F.2d at 119; *Anderson*, 367 F. Supp.2d at 1074.

As additional evidence to support this summary judgment burden, Schindel does present an Amended Declaration of a previous co-worker and does attach uncited evidence to his Response to the Motion for Summary Judgment. This Court need not peruse through this uncited evidence to find support for Schindel's arguments. *Willis v. Cleco Corp*., 749 F.3d 314, 317 (5th

Cir. 2014); *Hernandez*, 670 F.3d at 651; *Ragas*, 136 F.3d at 458. However, in the interest of caution, the Court will examine Schindel's Declaration presented to dispel the statements made in Hamilton's Declaration, presumably intended for the purpose of supporting this phase of the *McDonnell-Douglas* framework, or his summary judgment burden.

Accordingly, the Court will examine Schindel's Declaration presented to establish his prima facie case [*ECF No. 52, attachment 5, exh. 4*], Schindel's Declaration presented to dispel Hamilton's Declaration [*ECF No. 52, attachment 2, exh. 1*], and the Amended Declaration of Jon Cradit [*ECF No. 52, attachment 4, exh. 3*].

### 1. Schindel's Declaration

As discussed previously, Schindel's Declaration discussing removal of his responsibility for the internship program does not pertain to Schindel's demotion which is the subject of this suit. Schindel's statements regarding Hamilton's removal of this responsibility, even with the statement he was giving this assignment to younger employees, amount to speculation that this act was due to Schindel's age. The Declaration does not tie Hamilton's removal of responsibility to Schindel's actions while directing the site inspection or to his ultimate demotion.

The Declaration contains only self-serving statements and speculative implication, which this Court cannot accept as evidence from which a reasonable jury could infer the reason for Schindel's demotion was not his direction of the site inspection, but was, instead, age discrimination. *See McMichael*, 934 F.3d 456-57.

For these reasons, the Court finds this evidence scant and minimal and does not support Schindel's arguments at this stage of his summary judgment burden.

### 2. Jon Cradit's Declaration

To create an inference that age was the determinative factor in his demotion, Schindel presents evidence (although cited incorrectly), consisting of an Amended Declaration from a previous co-worker, Jon Cradit. *ECF No. 52, attachment 4, exh. 3*. In this Declaration, Cradit describes general employment decisions made by Hamilton which he disagreed with and disciplinary actions taken by Hamilton against Cradit which he disputed. However, the Court cannot consider these statements or described actions taken by Hamilton because these statements pertain particularly to Cradit, not Schindel, and because Cradit does not allege or provide context to deduce these specific actions against him were based upon Hamilton's age discrimination.

Specific to age-discriminatory acts taken by Hamilton, Cradit states,

> I observed Mark Hamilton manipulate the conditions of employment for most of the older employees that reported to him as either the First Level Supervisor or Second Level Supervisor. I believe he has done this systematically in an effort to rid the EAA of older employees like me, Geary Schindel, and others including Jim Winterle.

> I have reviewed the discovery spreadsheets provided by the EAA in Mr. Schindel's Age Discrimination in Employment case. I noticed that the EAA provided a list with the names and positions of employees of the EAA over several years including reasons for those employees' separation or termination from the EAA. My name was not included on this list and it clearly should have been included. I have heard age related slurs in the EAA workplace by Hamilton and others. I did not think much of these age related remarks at first but I came to realize that Hamilton was targeting older employees like me and Geary Schindel.

> When I say age slurs I mean words like "old guys," or "we need to get some new blood in here" or remarks like "you can get two young guys for the cost of one of these old guys." This set the tone for the EAA in my view.

*ECF No. 52, attachment 4, exh. 3.*

Specific to the statements made by Cradit, an employee may show pretext and discriminatory motive by pointing to age-related comments made by a person initiating the adverse employment action. *McMichael*, 934 F.3d at 457. To do so, the comment must involve "(1) discrim-

inatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *McMichael*, 934 F.3d at 457-58 (quoting *Squyres*, 782 F.3d at 236). To involve "discriminatory animus," a statement must reference age in a derogatory or stereotypical way. *Id*. at 458 (*citing Rachid*, 376 F.3d at 315 (finding evidence of age discrimination where the employer told the plaintiff "... you're too old"). To show discriminatory animus, the subject statement must show a desire to replace older employees with younger ones. *See McMichael*, 934 F.3d at 458 (*citing Palasota*, 342 F.3d at 577–78 (finding sufficient evidence to sustain a jury verdict where the employer stated the plaintiff's "sales techniques were out of the 'old school' of selling"; commented "there was a 'graying of the sales force'" and the employer needed "to find a way to get through it;" and recommended severance packages for fourteen named employees, all of whom were specifically identified as over fifty years of age, to create "the flexibility to bring on some new players").

Because it supplies only implications of age discrimination, Cradit's Declaration does not provide enough for a reasonable jury to infer discriminatory animus as the reason for Schindel's demotion or to infer an overarching desire by Hamilton to replace older workers with younger ones. While more specific than Schindel's Declaration, Cradit's statements are not particular enough to create an inference that age was a determinative factor in Schindel's demotion, as he references age-discriminatory acts generally; not specific to Schindel or any other identifiable similarly situated employee. Cradit states generally that he "heard age related slurs in the EAA workplace by Hamilton and others," such as "old guys," and "we need to get some new blood in here," and "you can get two young guys for the cost of one of these old guys." However, these age-related remarks are too general, for a jury to infer that Hamilton's age-discriminatory mo-

tive, not his perceived impropriety of Schindel's actions at the inspection site, was the reason for his demotion. The remarks could be interpreted to show general discriminatory animus; however, they fall short of connecting any discriminatory animus as the reason for Hamilton's demotion of Schindel and fail to specify when the comments were made or the context of the comments.

Finally, general statements like these, of "old guys" and "new blood", cannot, alone, demonstrate discriminatory animus. *See e.g., Squyres*, 782 F.3d at 236 ("old guy" comments were not evidence of discriminatory animus where they were sporadic and plaintiff did not find them offensive); *Sanstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 900 (5th Cir. 2002) ("old guy" comment made in response to "young guy" comment was not discriminatory). Even if sufficient to infer discriminatory animus, such remarks "cannot be the sole proof of age discrimination." *Tagliabue v. Orkin, LLC*, 794 Fed.App'x. 389, 399 (5th Cir. 2019) (age-related remarks insufficient to defeat summary judgment where no other evidence of age discrimination existed).

Because there is no other evidence linking Schindel's age to his demotion and because Cradit's statements do not link discriminatory animus to Schindel's demotion, his Declaration falls short to provide enough evidence from which a jury could infer age discrimination was the real reason for Schindel's demotion.

### 3.  Schindel's Declaration Disputing Hamilton's Declaration

Finally, in the interest of caution and to provide Schindel with ample opportunity to satisfy his burden at this stage of summary judgment, the Court examined Schindel's Declaration disputing Hamilton's Declaration that the EEA presented to provide a legitimate, non-discriminatory reason for Schindel's demotion. *ECF No. 52, attachment 2, exh. 1.*

In this uncited Declaration, Schindel presents his perception of the facts surrounding the site inspection, his opinions and observations which led to his directive to employees to enter the

sinkhole and his reasons for determination this was a safe venture. Schindel provides his reasoning why Hamilton's perceptions of Schindel's actions were not credible and were unfounded and how Schindel's experience in the field, particularly with cave exploration, were far superior and provided much stronger basis to determine the value and safety of the inspection decision. Based upon these perceptions and reasoning, Schindel opines the EAA's action of demoting him based upon his field directive to enter a sinkhole is not credible.

While the Court appreciates Schindel's perception of the safety of his directive and extensive experience in safe cave exploration, these statements are not sufficient to satisfy his summary judgment burden because the Declaration simply dispels and disagrees with the EAA's reasoning for his demotion. The Declaration provides no basis from which a jury could infer age discrimination was the true basis for Schindel's demotion. Even were the Court to accept all statements as true and agree with Schindel, this demotion, though improper, would not automatically infer age discrimination was the true reason. Schindel's disagreement is not sufficient to imply age discrimination, and even so, Schindel must provide evidence beyond the impropriety of his demotion that permits a factfinder to infer the EAA's reason was a pretext for age discrimination. *See, e.g., Owens v. Circassia Pharmaceuticals, Inc.*, 33 F.4th 814, 826 (5th Cir. 2022)(unwise or incorrect decisions do not necessarily give rise to an inference of discrimination); *Bryant v. Compass Group USA Inc.,* 413 F.3d 471, 478 (5th Cir. 2005)("Management does not have to make proper decisions, only non-discriminatory ones.")*; Little v. Republic Refining Co.,* 924 F.2d 93, 97 (5th Cir. 1991) ("even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for termination).

After review of Schindel's Declarations and Cradit's Declaration, this Court concludes Schindel does not satisfy his summary judgment burden to present evidence from which the trier

of fact could infer the EAA's non-discriminatory reason for his demotion was pretext and age discrimination was the true reason.

### Conclusion

For the reasons given, the Court GRANTS the EAA's Motion for Summary Judgment. Any pending motions are dismissed as moot. The Clerk of Court is DIRECTED to close this case.

Final Judgment will issue separately.

It is so ORDERED.
SIGNED this 23rd day of April, 2024.

JASON  PULLIAM
UNITED STATES DISTRICT JUDGE